**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| MOZELLE BOARD, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>JO ANNE B. BARNHART, Commissioner )<br> of the Social Security Administration, )<br>)<br>Defendant. ) | 1:03-cv-1799-SEB-VSS |

**Entry Discussing Complaint for Judicial Review**

Mozelle Board ("Board") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded** for further proceedings.

## I. BACKGROUND

Board applied for DIB on March 6, 2001, alleging an onset date of November 3, 1996. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on September 9, 2002. Board was present, accompanied by her attorney. Medical and other records were introduced into evidence. Board, her daughter, and a vocational expert testified. The ALJ denied Board's application on September 24, 2002. On October 3, 2003, the Appeals Council denied Board's request for review of the ALJ's decision, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. An agreed motion to remand was filed on February 3, 2004, which was granted on February 6, 2004. A second hearing was held on August 31, 2004. On May 9, 2005, the ALJ again denied Board's claim. On November 3, 2005, the Appeals Council denied Board's request for review of the ALJ's decision. Board's motion to re-open this action was granted on December 23, 2005. The court has jurisdiction over Board's complaint pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Board met the insured status requirements of Title II of the Act on November 3, 1996, and continued to meet them through March 31, 2001; (2) Board did not engage in substantial gainful activity at any time from November 3, 1996, her alleged onset date of disability, through March 31, 2001, the date her insured status expired; (3) Board had "severe" impairments consisting of glaucoma, left eye blindness, sarcoidosis, and degenerative disc disease of the cervical and lumbar spine during the period of November 3, 1996, through March 31, 2001; (4) Board's impairments, either singly or in combination, did not meet and were not equivalent in severity to one of the listed impairments in Appendix 1, Subpart P of Regulations No. 4, during the period from November 3, 1996, through March 31, 2001; (5) the allegations regarding Board's symptoms and limitations were credible only to the extent consistent with the residual functional capacity ("RFC") she was determined to retain herein; (6) during the period from November 3, 1996, through March 31, 2001, Board retained the RFC to perform light exertional level work which allowed her to alternate into a sitting or standing position at her option for periods of one to two minutes per hour, and which did not involve more than occasional bending, squatting, or climbing of stairs or ramps, no kneeling, crawling or climbing of ropes, ladders, or scaffolds, and no work at unprotected heights, around dangerous moving machinery, or operating a motor vehicle (or being around open flames or large bodies of water), and the work should not require binocular vision; (7) based on VE testimony, Board's past relevant work as a gauge reader did not require the performance of work-related activities precluded by her RFC; and (8) Board's medically determinable impairments did not prevent her from performing her past relevant work as a gauge reader from November 3, 1996, through March 31, 2001. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Board was not disabled as defined in the Act at any time from November 3, 1996, her alleged onset date of disability, through March 31, 2001, the date her insured status expired.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his

2

> impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

The ALJ determined that Board, 64 years old at the time her insured status expired, had severe impairments of glaucoma, left eye blindness, sarcoidosis, and degenerative disc disease of the cervical and lumbar spine, but that she could perform her past relevant work as a gauge reader. Board argues that the ALJ's decision is not supported by substantial evidence. Specifically, Board contends that the ALJ failed to discuss the applicable listing, improperly weighed her credibility, and erred in finding that she could perform her past relevant work.

Board argues that the ALJ failed to articulate any reasoning for finding that her impairments did not meet or equal Listing 2.04. It is true that the ALJ discussed Listing 2.02 (impairment of visual acuity) and Listing 2.03 (contraction of visual fields), but did not mention Listing 2.04 (loss of visual efficiency). Board contends that the ALJ should have obtained medical expert opinion regarding the issue of medical equivalency to listed impairments. The Seventh Circuit has stated that "failure to discuss or even cite a listing, combined with an otherwise perfunctory analysis, may require a remand." *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003).

Listing 2.04 requires a visual efficiency of the better eye after best correction is 20 percent or less, based on the product of the percent of remaining visual acuity efficiency and the percent of remaining visual field efficiency. "Loss of visual efficiency may be caused by disease or injury resulting in reduction of visual acuity or visual field." 20 C.F.R. Pt. 404, Subpt. P., App. 1., 2.00A, #5. "The visual efficiency of one eye is the product of the percentage of visual acuity efficiency and the percentage of visual field efficiency. (See tables no. 1 and 2, following 2.09.)." *Id.*

In the report of April 16, 2001, the ophthalmologist noted that Board's visual fields were constricted. (R. at 206). The determination as to whether Board's visual impairments meet or equal Listing 2.04, however, requires further expert analysis. Given the fact that the ALJ did discuss other vision disorder listings, it is unclear why he failed to mention the visual efficiency listing. A determination of whether Listing 2.04 is satisfied is best left addressed directly by a medical expert and then reviewed by the ALJ. The court cannot make an equivalency determination in the first instance, nor can it trace the ALJ's reasoning in this case as to that issue. The court notes, however, that some of the evidence to which Board points in support of her argument that her vision satisfies Listing 2.04 is dated in 2004, and unless there is evidence that such conditions also existed closer to the date that her insured status expired, it may not constitute substantial evidence as to the applicable period of eligibility. The case shall therefore be remanded for further development of this issue.

At step four of the analysis, the ALJ concluded that Board could perform her past relevant work as a gauge reader. The ALJ acknowledged that at the second hearing counsel questioned whether Board would be able to walk around the plant, i.e., perform her past relevant work, if she lacked depth perception and had tunnel vision. (R. at 24). The ALJ reasoned that "[i]n light of her testimony that she can currently walk around and not run into a wall, I conclude that even if she lacked depth perception and had tunnel vision, it did not prevent her from performing her past relevant work during the period from November 3, 1996, through March 31, 2001." *Id.* Board correctly argues, however, that this conclusion is *not* supported by the testimony of the VE. Rather, the VE testified that lacking depth perception and having tunnel vision, in addition to not having binocular vision, would create additional problems which would affect her ability to move about in a plant. (R. at 76-77). With the limitations of lack of depth perception and tunnel vision added to the hypothetical, the ALJ's conclusion concerning Board's ability to perform her past relevant work is not supported by substantial evidence. The ALJ's rationale concerning Board's ability to walk around without running into walls is not supported by any medical or vocational source. Although it is arguable whether the ALJ did, in fact, find that Board had tunnel vision and lacked depth perception, given the ALJ's unsupported conclusion that even if she did she could perform her past work, the court finds that it must remand the action so that this issue can be clarified through VE testimony.

Board also argues that the ALJ erred in evaluating her credibility. She argues that in finding Board credible only to the extent of her RFC, the ALJ relied solely on his conclusion that the frequency and severity of her symptoms were not reasonably consistent with the objective medical evidence or other evidence of record. (R. at 24). This was not, however, the ALJ's only basis for his consideration of her credibility. The ALJ noted that until October 2000, there were few documented complaints of neck pain or upper extremity pain. *Id.* He also noted that medications were helpful to Board in alleviating her symptoms and that she did not experience significant side effects. *Id.* He stated that she still drove occasionally. *Id.* The court grants special deference to the credibility determination made by the ALJ and generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001). In this case, the ALJ provided reasons supported by record evidence for finding not fully credible Board's allegations that she could not perform basic work activities. The ALJ's discussion relating

4

to Board's credibility is adequate to allow the court to trace his reasoning. The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination. Clearly, if other findings are revised on remand, then a change in the credibility determination may also be appropriate.

### III.  CONCLUSION

For the reasons described, the ALJ's decision is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**


Date:   01/11/2007

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana